Hugh Max **FURMAN**, Petitioner,

v.

Stephen **DALSHEIM**, Superintendent, Ossining Correctional Facility, Respondent.

No. 79 Civ. 4684 (HFW).

United States District Court, S. D. New York.

April 15, 1980.

Hugh Max Furman, for petitioner, pro se.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for respondent by Nancy B. Bensal, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

WERKER, District Judge.

*Pro Se* petitioner Hugh Max Furman is presently incarcerated at the Wallkill Correctional Facility, Wallkill, New York, pursuant to judgments of conviction entered in Dutchess and Orange Counties in 1978. In this petition for habeas corpus relief under 28 U.S.C. § 2254, petitioner seeks review of a 1971 Orange County conviction which was the basis for his being sentenced in 1978 as a second felony offender.

### FACTS

In 1969 petitioner and three co-defendants were indicted by an Orange County grand jury and charged with one count of

burglary in the third degree and one count of petit larceny. Petitioner was arraigned on these charges on July 29, 1969 and entered a plea of not guilty. The burglary count of the indictment read as follows:

> THE GRAND JURY OF THE COUNTY OF ORANGE, by this indictment, accuse . . . HUGH MAX FURMAN [and three others] of the crime of BURGLARY IN THE THIRD DEGREE in violation of the provisions of Section 140.20 of the Penal Law of the State of New York, committed as follows:
>
> The said defendants, on or about the 27th day of April, 1969, at the Town of Newburgh, Orange County, New York, knowingly entered and remained unlawfully in a building owned by Fred Ferrary.

Petitioner was subsequently charged in a second indictment with criminal possession of stolen property in the second degree and grand larceny in the third degree.

On April 5, 1971, petitioner appeared with counsel before the Honorable Abraham Isseks, County Court Judge, Orange County, and changed his plea of not guilty to the burglary charge to guilty. As part of the plea agreement, the petit larceny count of the first indictment and the entire second indictment were dismissed. At the allocution, petitioner was not advised of the constitutional rights which were being waived by his guilty plea, nor did the court question him as to the circumstances and details of the crime to which he was pleading guilty. Petitioner was, however, advised that burglary in the third degree was a felony. In response to the court's inquiries, petitioner stated that he had discussed the plea with his attorney and that no promises had been made to him with respect to sentencing. It was clear to petitioner that his guilty plea to the burglary count would cover all outstanding counts and indictments.

On June 15, 1971, Furman was sentenced to a term of 0 to 4 years imprisonment.

Thereafter, petitioner filed a timely notice of appeal to the Appellate Division and was assigned counsel. The appeal was withdrawn in 1974, however, because petitioner "believed, due to [his] guilty plea, that there were no issues to assert on appeal." Reply affid. of Hugh Max Furman, sworn to Dec. 10, 1979, at 3. Prior to the withdrawal of his appeal, petitioner had moved *pro se* for a writ of *coram nobis*. That motion was denied without a hearing on November 10, 1971. Shortly thereafter, petitioner moved *pro se* to set aside the sentence pursuant to N.Y.C.P.L. § 440.20. Judge Isseks treated the motion as one to set aside judgment pursuant to N.Y.C.P.L. § 440.10 and denied the motion without a hearing on March 27, 1972. Petitioner's application to the Appellate Division for leave to appeal was denied on May 4, 1972 on the ground that his "remedy is by way of direct attack on the judgment of conviction by prosecution of the appeal therefrom." *People v. Furman*, N.Y.L.J., May 4, 1972 (2d Dep't).

Petitioner filed a third motion after the denial of his second one and sought an order directing his return to Orange County Court for resentencing. He alleged in this motion that the indictment containing the burglary count was defective in that it had charged him with criminal trespass rather than burglary in the third degree. Judge Isseks found that the indictment was indeed defective, but nevertheless denied the motion on the ground that the petitioner had waived any objections to the indictment by his failure to attack the sufficiency of the indictment when he "was called to judgment." *People v. Furman*, No. 3414/70, slip op. at 2 (Orange Co. Ct. Dec. 7, 1972).

In 1977, after having served his sentence on the 1971 conviction, petitioner was indicted in Orange and Dutchess Counties and charged with having committed a number of felonies.[1] He pled guilty to attempt-

---

1. Although neither the petitioner nor the respondent discusses this fact, the petitioner was apparently convicted of assault in the second degree, criminal mischief in the fourth degree and conspiracy in the second degree in 1977 following a jury trial. He was sentenced to three concurrent sentences, the longest of which was 3½ to 7 years on the assault convic-

ed possession of stolen property in Dutchess County, and was sentenced on June 13, 1978 as a second felony offender to a term of 2 to 4 years. He also pled guilty to attempted reckless endangerment in Orange County and was sentenced on June 26, 1978 as a second felony offender to a term of 1½ to 3 years to run concurrently with the Dutchess County sentence. The predicate felony for petitioner's being sentenced as a second felony offender was his 1971 conviction. *See* Respondent's Mem. of Law in Opp. to Petition, at 4–5.

In 1979, petitioner moved once again to vacate his 1971 conviction on the grounds that the indictment was defective and that his guilty plea was entered in violation of his constitutional rights. On June 1, 1979, Judge Isseks denied the motion on the grounds that Furman had failed to perfect his appeal and that this failure was unjustifiable. N.Y.C.P.L. § 440.10. On July 20, 1979, leave to appeal to the Appellate Division, Second Department, was denied.

In October 1979, petitioner filed the instant application for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 on the following grounds: "Plea of guilty and Indictment are defective and not made voluntarily with understanding of the charge."

## DISCUSSION

### A. *Exhaustion*

■ The threshold issue is whether the petitioner has exhausted his available state remedies as required by 28 U.S.C. § 2254(b) and (c). Since petitioner's direct appeal of the 1971 conviction was withdrawn in 1974,

it is evident he no longer has any right to directly appeal that conviction. *See* N.Y.C. P.L. §§ 460.10, 460.30 (McKinney 1971 & Supp. 1979–80). Petitioner filed four post-judgment motions attacking the 1971 conviction collaterally on the basis of the same claims raised herein. All four of these motions were denied. The petitioner sought leave to appeal to the Appellate Division the denial of two of these motions, and leave to appeal was denied as to both. Although he apparently did not seek leave to appeal to the Court of Appeals these orders of the Appellate Division denying him leave to appeal, any such application undoubtedly would have been fruitless. In his June 1, 1979 decision and order denying petitioner's motion to vacate judgment, Judge Isseks felt that petitioner should have raised his claims on appeal and that his failure to appeal was not justified. The Appellate Division evidently agreed, denying petitioner's application for leave to appeal without opinion. Under these circumstances, it is highly unlikely that the Court of Appeals would have issued a certificate granting leave to appeal, for it may do so only when the "case involves a question of law which ought to be reviewed by the court of appeals." N.Y.C.P.L. § 460.20 (McKinney 1971).[2] In any event, at this juncture, petitioner would be foreclosed from seeking leave to appeal to the Court of Appeals since such applications must be made within 30 days after service of a copy of the order sought to be appealed. *Id.* § 460.10(5)(a) (McKinney Supp. 1979–1980).

■ In view of petitioner's post-judgment motions, "the state courts have been

---

tion. *See* tr. of Feb. 3, 1977, at 13–15. It is possible, then, that petitioner would remain in incarceration even though this petition were granted. This possibility, however, does not preclude petitioner from challenging the 1978 convictions by attacking the 1971 conviction. *See Grimes v. United States*, 607 F.2d 6, 9 (2d Cir. 1979).

**2.** Petitioner contends that "no appeal lies to the Court of Appeals from a denial of a discretionary motion for leave to appeal to the Appellate Division." Reply affid. of Hugh Max Furman, sworn to Dec. 10, 1979, at 5. However, no statutory or other authority is cited for this

proposition, and N.Y.C.P.L. § 460.20 (McKinney 1971) would indicate otherwise. That section provides in part: "A certificate granting leave to appeal to the court of appeals from an order of an intermediate appellate court is an order of a judge granting such permission and certifying that the case involves a question of law which ought to be reviewed by the court of appeals." A judge may grant leave to appeal to the Court of Appeals, therefore, if he feels an issue of law warranting review has been raised by a particular case, even though the Appellate Division denied an application for leave to appeal.

given a fair opportunity to consider and act upon the claims on which the habeas corpus petition is based." *Twitty v. Smith*, 614 F.2d 325, at 331 (2d Cir. 1979). Moreover, it would appear that there are no state remedies still available to the petitioner. Although the respondent argues, in a conclusory fashion, that petitioner has not met the exhaustion requirement, the respondent fails to point out any state remedies which are in fact available. Accordingly, I hold that the petitioner has exhausted all available state remedies.

### B. *Waiver*

 A more difficult question is posed by respondent's contention that petitioner waived any claims of error he may have had with respect to the indictment and allocution in question. As noted above, the state courts held that petitioner had waived any claims of error because of his failure to perfect his direct appeal of the 1971 conviction. Where state law imposes a waiver for failure to comply with state procedural rules, "a federal court [must] forgo the exercise of its habeas corpus power" due to "considerations of comity and concerns for the orderly administration of criminal justice," *Francis v. Henderson*, 425 U.S. 536, 539, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976), except upon a showing of cause for the failure to comply and actual prejudice resulting from the alleged error. *Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91, 97 S.Ct. 2497, 2506, 2508 (1977); *Francis v. Henderson*, 425 U.S. at 542, 96 S.Ct. at 1711; *Pacelli v. United States*, 588 F.2d 360, 363 (2d Cir. 1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979).

In the instant case, the petitioner has failed to show sufficient cause for his failure to appeal. The record shows that his notice of appeal was timely filed and that counsel was appointed to represent him. The fact that he filed three motions attacking the 1971 conviction collaterally while his appeal was still pending indicates that he was aware of possible grounds to raise on appeal. In addition, when he sought leave to appeal an order denying one of these

motions, he was specifically advised by the Appellate Division, Second Department, that his sole remedy was to prosecute the appeal that was in fact still pending. Petitioner inexplicably failed to do so, and his appeal was instead withdrawn. Under these circumstances, petitioner cannot now argue that the withdrawal of his appeal and the resultant waiver of claims that could have been raised on appeal were not knowing and intelligent.

The conclusion that petitioner waived any claims of error is substantiated by the fact that he failed to make any objections at any of the proceedings in question. Neither he nor his attorney made any objections at his plea and sentencing in 1971. *See* tr. of April 5, 1971 and June 15, 1971 proceedings. At his sentencing on June 26, 1978 in the Orange County Court, the petitioner explicitly waived any claims of error he may have had with respect to the 1971 conviction. After petitioner was advised that he was being sentenced as a second felony offender on the basis of the 1971 conviction, the following exchange took place between the court and the petitioner:

> THE COURT: You have the right to contest the constitutionality, the constitutional defects when you took this plea in 1971, you have a right to contest the constitutionality of something that occurred at that particular time or otherwise can be waived. [sic]
>
> [PETITIONER]: I waive it.

Tr. of June 26, 1978 proceeding, at 3. Petitioner was represented by counsel at the sentencing and stated on the record that he had consulted with his attorney about the sentencing.

It must also be noted that petitioner's plea of guilty to the burglary count in 1971 covered all outstanding charges. Even though the indictment was defective as to the burglary count, the petitioner knew that if he pled guilty to burglary in the third degree, additional charges of petit larceny, criminal possession of stolen property in the second degree and grand larceny in the third degree would be dismissed.

Petitioner places great reliance on *Harned v. Henderson*, 588 F.2d 12 (2d Cir. 1978), and it would appear at first glance that this reliance is justified. There, the defendant pled guilty to burglary in the first degree in satisfaction of two indictments. The defendant subsequently contended that his plea was involuntary in that he had not fully understood the elements of the crime to which he pled guilty and that neither the court nor his attorney adequately explained those elements to him. The second circuit agreed, and affirmed the district court's granting of a writ of habeas corpus.

One significant fact, however, distinguishes *Harned* from the instant case. The issue of waiver was not present in that case because the defendant had filed a motion for leave to withdraw his guilty plea prior to sentencing. The trial judge denied the motion, and sentenced the defendant to 10 years imprisonment. After unsuccessfully appealing his conviction to the Appellate Division and the Court of Appeals, the defendant commenced his federal action for habeas relief. In the instant situation, petitioner did not move for leave to withdraw his guilty plea. He did not raise any objections to either the indictment or the allocution at his sentencing, and although he filed a notice of appeal, the appeal was subsequently withdrawn. Hence, *Harned v. Henderson* does not control the instant case.

Petitioner also relies heavily on *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The defendant in that case had been indicted in New York for first degree murder. After plea bargaining, he pled guilty to second degree murder. The defendant did not directly appeal, but sought to attack his conviction collaterally. After these efforts proved to be unsuccessful, he sought federal habeas relief on the ground that his plea had been involuntary because he had not been apprised that intent to cause death was an element of second degree murder. The Supreme Court affirmed the granting of the writ on the ground that the defendant had not received adequate notice of the offense to which he had pled guilty.

Two considerations, however, undermine the applicability of the *Morgan* case to the instant one. First, the facts of *Morgan* are to a certain extent unique in that the defendant there had been classified as "retarded" and was "substantially below average intelligence." 426 U.S. at 641–42, 647, 96 S.Ct. at 2255–56, 2258; *see also Harned v. Henderson*, 588 F.2d at 20. It is evident from the *pro se* papers filed herein and in the state proceedings that the petitioner is neither "retarded" nor "substantially below average intelligence." Second, the circumstances surrounding the waiver in the instant case did not exist in *Morgan*. Although the defendant there did not take a direct appeal from his conviction, the Supreme Court did not consider the issue of whether the defendant had waived any claims of error by his failure to appeal. In all likelihood, the defendant's time to appeal elapsed by the time he became aware of his rights. In the instant case, however, the petitioner did indeed file a timely appeal. While that appeal was pending, he sought to attack his conviction collaterally and was told by the Appellate Division that his sole remedy was to pursue his appeal. Petitioner must have known that there were possible constitutional problems with his conviction, since he raised these problems collaterally. Yet, when he was told that his recourse was to continue the prosecution of his appeal, he failed to do so. Under these circumstances, *Henderson v. Morgan* does not preclude the conclusion that the petitioner waived his claims of error.

### CONCLUSION

In accordance with the above, I hold that the petitioner is barred from seeking habeas corpus relief by his failure to comply with state procedural rules. Since he has not made a showing of cause for this failure, the petition is dismissed and the writ denied.

So ordered.